## DEREN, GENETT & MACREERY, P.C.
ATTORNEYS AT LAW
28 EDGEMONT ROAD
KATONAH, NEW YORK 10536

_____

(914) 232-8174
FAX (914) 232-0363

RICHARD A. GENETT, ESQ.
JOHN BRIAN MACREERY, ESQ.

EDWARD G. DEREN, ESQ. (1922-1997)

July 18, 2011

The Honorable Allyne R. Ross
United States District Judge
Eastern District of New York
225 Cadman Plaza East, Suite 252
Brooklyn, NY 11201

     Re: **United States v. Jack Palazzo**
        09-CR-459

Dear Judge Ross:

On behalf of my client, I submit this memorandum to aid the Court in its determination of the restitution to be assessed in the sentencing of Jack Palazzo in the above referenced matter.

I submit this memorandum in response to the application of Consolidated Edison Company of New York for restitution and in response to the letter memorandum filed by the United States Attorney's Office in this matter.

### Background

Jack Palazzo is a former Consolidated Edison Company of New York (Con Ed) construction representative. Mr. Palazzo worked for Con Ed from May 6, 1974 through December 31, 2008.

From January 2001 through March 2007, Mr. Palazzo was engaged with certain other Con Ed employees in two separate and distinct bribery conspiracies. One scheme involved Judlau Contracting, Inc. ("Judlau") and the second involved Felix Associates, LLC ("Felix").

From January 2001 through March 2007, Jack Palazzo, together with Thomas Fetter and William Shannon were involved in a money laundering bribery operation with Judlau.

From June 2004 through March 2007, Jack Palazzo together with James Coffin, Thomas Fetter and William Shannon were involved in a bribery/kick back operation with Felix.

Jack Palazzo's Cooperation[1]

In March of 2007, Jack Palazzo was arrested by federal agents immediately after a meeting with Paul Critelli of Judlau. Mr. Palazzo was arrested in Manhattan after receiving an envelope containing bribery money which had been laundered through an account at a credit union located in the Eastern District of New York. Upon his arrest, the government sought Mr. Palazzo's cooperation in the government's investigation of the Judlau money laundering operation. On the date of his arrest, Mr. Palazzo agreed to cooperate with the government, not only in connection with the Judlau money laundering scheme, but also with an investigation of the bribes that he had received from Felix.

Mr. Palazzo's cooperation is well known to this Court based upon his detailed testimony in the case of United States v. Nathaniel Ham, 10 CR 336 (ARR). Mr. Palazzo agreed to obtain evidence for the government by wearing a hidden audio recorder and engaging in conversations with Mr. Coffin, Mr. Fetter and Mr. Shannon. Prior to engaging his ConEd coworkers in these conversations, Mr. Palazzo fully briefed the government on the scope of the criminal matters in which he was personally involved and the activities of his coworkers in both the Judlau and the Felix schemes.

At the time of Mr. Palazzo's arrest, the government was actively pursuing its investigation of the Judlau money laundering conspiracy. Mr. Palazzo's cooperation provided information and evidence which opened the door to a new investigation of the Felix bribery conspiracy.

Although the government has never revealed to me their investigative techniques, it appears obvious that Mr. Palazzo's cooperation led to William Shannon's (initial) cooperation. Mr. Shannon was/is the brother-in-law of Nathanial Ham who worked at the credit union through which the bribery money was laundered. Mr. Shannon also knew an official at Felix ("Zep") who was the Felix contact man for the Felix bribery payments.

It is my understanding that Jack Palazzo's cooperation provided an assistance to the government to "flip" William Shannon. Mr. Shannon in turn provided the government with the ability to "flip" Zep. Zep then provided the basis for the government to make cases against all the other ConEd employees from whom restitution is sought by their former employer.

Mr. Palazzo entered into a cooperation agreement with the government. A copy of that cooperation agreement is annexed. He continued to cooperate with the government pursuant to this agreement.

On July 13, 2009 Jack Palazzo pleaded guilty to the one count information charging him with money laundering conspiracy. As part of that plea, Mr. Palazzo was asked to set forth the facts underlying his plea. A draft allocution was prepared by the United States Attorney's Office and reviewed by Mr. Palazzo, AUSA Monica Ryan and myself. It was edited to set forth the facts which form the basis of Mr. Palazzo's plea. A copy of that allocution, as edited, was read

---

[1] My understanding of Jack Palazzo's cooperation is based upon conversations with my client and various federal law enforcement agents and members of the United States Attorney's Office.

by Mr. Palazzo to the Court.  A copy of this allocution is annexed.  Specifically, Mr. Palazzo stated:

> "From January 2001 through March 2007, I was a Construction Representative with the Consolidated Edison Company of New York, Inc., supervising work on various construction projects for Con Ed.  These construction projects were located within the New York metropolitan area including a project with Judlau Construction whose offices were in College Point, Queens, which was the situs of a money laundering operation. During this period of time, I received bribe payments from construction contractors, and in return, I provided favorable treatment.  This favorable treatment included, among other things, expedited approval of the contractor's invoices for payment and approval of invoices containing inflated costs.
> Some of these bribe payments were laundered through a bank account by depositing checks mailed from a contractor, Judlau, which were purported to be payments to a subcontractor.  Cash was then withdrawn from the account to pay bribes to myself and other Con Ed employees.  I agreed with other Con Ed employees to participate in this money laundering scheme in an attempt to conceal the bribery activity.  I knew at the time I received the bribe payments that what I was doing was wrong."

Specifically excluded from the allocution was the language:

> "Supposedly incurred by the contractors, and approval of invoices for material not provided or work not done."

At some point in the course of the government's investigation, Con Edison learned that Jack Palazzo was cooperating with federal law enforcement agencies in the investigation of the crimes committed against Con Ed.

After Mr. Palazzo's plea, a civil suit was instituted against him by Con Edison to recover their losses, including their costs for investigating the Felix and/or Judlau bribery schemes. Although not required, Con Edison gratuitously disclosed Jack Palazzo's cooperation with the government in the complaint filed in Supreme Court New York County under Index No.: 651105/2010.  In this public record, Con Edison gave notice to all the Con Ed defendants that Jack Palazzo was cooperating with the government.[2]

Jack Palazzo provided complete cooperation for the government from the date of his arrest, to date.  When William Shannon refused to testify against his brother-in-law, the government sought Mr. Palazzo's testimony at the trial of Nathanial Ham.  At that trial Mr. Palazzo was asked to testify about all of his criminal activity by the government and Mr. Palazzo complied.

---

[2] In Con Edison Discovery Demands, Mr. Palazzo's former employer asked him to disclose the contents of any and all life insurance policies he had on his life.  As Con Edison has already revealed my client's status as a cooperating defendant, there is no point in attempting to hide that fact now.

As set forth in the government's Section 5K.1.1 letter/motion to your Honor dated April 8, 2011, Jack Palazzo provided "powerful evidence against Ham." A copy of this document is annexed.

In particular he was able to establish Ham as the bridge between the bribery scheme negotiated between Shannon and Judlau, and the account activity at the credit union where Ham structured and laundered the resulting bribery proceeds. Mr. Palazzo presented that testimony in a simple, blunt, unadorned manner that rendered the testimony that much more credible and he maintained that manner throughout cross examination that did not substantially discredit or even limit his evidence.

## The Request for Restitution

Con Edison now seeks more restitution from Jack Palazzo than from any other former Con Ed employee. They seek $412,665.66 in restitution from Mr. Palazzo for his involvement in the Judlau money laundering scheme. Con Ed seeks $126,816.47 restitution from Mr. Palazzo for the Felix bribery scheme.

They seek substantially less restitution from each and every one of the other defendants, only one of whom provided any cooperation to the government to recover and prosecute the crimes committed against Con Ed.

## Legal Argument

Mr. Palazzo does not contest the arguments of Davis Polk and the government that Con Ed is entitled to restitution under 18 United States Code Section 3663(a). As presently enacted, the restitution statutes confer authority to a court to order a participant in a conspiracy to pay restitution, even on uncharged or acquitted counts. United States v. Boyd, 222 F3d 47 (2nd Cir, 2000).

However, I believe that a defendant can only be ordered to pay restitution with respect to the applicable scheme, conspiracy or pattern to which he has pleaded guilty. See United States v. Wright, 496 F3d 371 (5th Cir, 2007); see also United States v. Donaghy, 570 F. Supp. 2d 411 (EDNY, 2008).

In the government's letter brief of June 20, 2011, it is stated that:

> "Each of these defendants pleaded guilty and admitted to accepting bribes while employed as inspectors for Consolidated Edison of New York ("Con Ed") . . . the defendants acknowledged during their allocutions . . . that as a part of their respective bribery schemes, they generated improper losses for their employer at Con Ed by approving inflating payments to the contractor paying the bribes, Felix Associates, LLC ("Felix") in exchange for the payoffs they received."

Although we do not deny that Jack Palazzo received bribery payments from Felix, his plea allocution was to the Judlau money laundering scheme.

4

Mr. Palazzo would certainly request the Court to consider this fact, in ordering restitution in light of United States v. Wright, supra and United States v. Donaghy, supra.

In their letter brief of June 20, 2011, the government refers to the restitution received by Con Ed in its civil settlement with Felix. In light of Mr. Palazzo's cooperation, we believe it appropriate for the Court to conduct a hearing to determine what effect, if any, Mr. Palazzo's cooperation assisted in Con Edison's recovery of these monies. The Court could certainly consider this factor in determining the appropriate restitution in this case. The mathematical formula suggested by both Con Ed's counsel and the United States Attorney's Office is, we submit, but one consideration to be applied in this case.

Mr. Palazzo asks the Court to consider how his cooperation with government has assisted in restitution sums to be ordered against Thomas Fetter, William Shannon and James Coffin. We also ask the Court to consider whether Mr. Palazzo's cooperation has indirectly assisted in the prosecution of the other Con Ed employees who will be required to pay restitution.

Mr. Palazzo asks the Court to consider the chilling effect on future criminal prosecutions which would result if Mr. Palazzo is directed to pay the restitution requested by Con Ed with the approval of the United States Attorney's Office. If a mathematical formula for restitution is required in all "dishonest employee" cases, there will be no incentive for any individual to cooperate with the government. Indeed, it could be argued that there would be a strong incentive not to cooperate with the government if cooperation would invariably lead to a more severe restitution sentence than otherwise would be imposed.

If Your Honor agrees with Con Ed's position with respect to the Mandatory Victim Restitution Act as supported by the government, Jack Palazzo would ask the Court to take that into consideration with respect to the ultimate sentence of incarceration, if any, to be imposed on Mr. Palazzo in this case.

<u>Conclusion</u>

It is respectfully submitted that necessary facts have not been sufficiently developed to determine what restitution should be ordered in Jack Palazzo's case. Accordingly, we respectfully request a hearing to establish the facts necessary for the Court to make a fully informed determination in this matter.

Respectfully submitted,

Deren, Genett & Macreery, P.C.

by: _____

John Brian Macreery

JBM/cd
cc: See Attached List

United States District Court Clerk
Eastern District of New York
225 Cadman Plaza East, Suite 252
Brooklyn, NY 11201

Ms. Shana Bryant, U.S. Probation Officer
U.S. Probation Department
Eastern District of New York
147 Pierpont Street
Brooklyn, NY 11207-2712

Daniel D. Brownell, Esq., AUSA
United States Attorneys Office
Eastern District of New York
271 Cadman Plaza East, 7th Floor
Brooklyn, NY 11201

Carey R. Dunne, Esq.
Davis Polk & Wardwell, LLP
450 Lexington Avenue
New York, NY 10017

Scott A. Levinson, Esq.
Con Edison Company of New York, Inc.
4 Irving Place
Room 1800
New York, NY 10003

Alfredo Mendez, Esq.
Abrams, Fensterman Fensterman Eisman Greenberg Formato
  & Einiger, LLP
630 Third Avenue
New York, NY 10017

Melinda Sarafa, Esq.
Sarafa Law LLC
80 Pine Street, 33rd Floor
New York, NY 10005

Arnold Keith, Esq.
Hornstein Palumba & Keith
350 Broadway, Suite 1201
New York, NY 10013

Michael Bachner, Esq.
Bachner & Associates, P.C.
26 Broadway, Suite 1308
New York, NY 10004

Joel Winograd, Esq.
Winograd & Winograd, P.C.
450 Seventh Avenue, Suite 1308
New York, NY 10123

Jane Ann Murray, Esq.
Woolworth Building
233 Broadway, 22nd Floor
New York, NY 10279

Jorge Sorote, Esq.
110 Wall Street, 11th Floor
New York, NY 10005-3807

George Chalos, Esq.
Chalos & Co., P.C.
123 South Street
Oyster Bay, NY 11771

Anthony Mangone, Esq.
Santangelo Randazzo & Mangone LLP
151 Broadway
Hawthorne, NY 10532

Brian Waller, Esq.
Simon & Parnter, LLP
551 Fifth Avenue
New York, NY 10176

Peter Quijano, Esq.
381 Park Avenue South, Suite 701
New York, NY 10016

John Mullady, Esq.
57 Hennett Road
Valatie, NY 12184-6100

Marjorie J. Peerce, Esq.
Stillman Friedman & Shechtman
425 Park Avenue
New York, NY 10022

Jack Palazzo

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
UNITED STATES OF AMERICA,                           :

                                 :   09 CR 459 (ARR)
                   Plaintiff,    :   (Judge Ross)

                                 :

       - against -                            :

                                 :
JACK PALAZZO,                                        :
                   Defendant.    :
------------------------------------------------------------------------x

## DECLARATION OF JOHN BRIAN MACREERY IN SUPPORT OF THE
## RESTITUTION MEMORANDUM SUBMITTED ON BEHALF OF JACK PALAZZO

    I, John Brian Macreery, hereby declare the following to be true and correct:

    1.    I am an attorney in good standing of the bar of the State of New York and I am a

member of the firm Deren, Genett & Macreery, P.C., attorneys for Jack Palazzo in this action. I

am admitted to practice before this Court.  I respectfully submit this declaration in support of the

restitution memorandum and to place before the Court the documents described below.

    2.    Attached hereto as Exhibit A is the draft plea allocution of Jack Palazzo which

formed the basis for his conviction herein.

    3.    Attached hereto as Exhibit B is the cooperation agreement executed by Jack Palazzo

and the United States Attorney for the Eastern District of New York.

    4.    Annexed hereto as Exhibit C is the USSG Section 5K1.1 motion (by letter)

submitted to the Court with respect to Jack Palazzo's substantial assistance.

    5.    Pursuant to 28 USC Section 1746(2), I declare under penalty of perjury that the

foregoing is true and correct.

Katonah, New York
Executed on July 18, 2011

                                    John Brian Macreery

9

**EXHIBIT A**

# DRAFT ALLOCUTION

Count One

From January 2001 through March 2007, I was a Construction Representative with the

Consolidated Edison Company of New York, Inc., supervising work on various construction

projects for Con Ed. These construction projects were located within in the New York

metropolitan area, ~~including projects located within Queens County and New York County.~~ *include a project with Judlau Construction whose offices were in College Point Queens, which was the situs of a money laundering operation.*

During this period of time, I recevied bribe payments from construction contractors, and in

return, I providedr favorable treatment. This favorable treatment included, among other things,

expedited approval of the contractor's invoices for payment, *and* approval of invoices containing

inflated costs ~~supposedly incurred by the contractors, and approval of invoices for material not provided or work not done.~~

Some of these bribe payments were laundered through a bank account by depositing

checks ~~that had been mailed~~ from a contractor, Judlau, which purported to be payments to a

subcontractor. Cash was then withdrawn from the account to pay bribes to myself and other Con

Ed employees. I agreed with other Con Ed employees to participate in this money laundering

scheme in an attempt to conceal the bribery activity. I knew at the time I received the bribe

payments that what I was doing was wrong.

EXHIBIT B

RTF:MER:BGK
F. #2005R01856
F. #2007V00613

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA                COOPERATION AGREEMENT

   - against -                          08-CR-      (   )

JACK PALAZZO,

              Defendant.

- - - - - - - - - - - - - - - -X

       Pursuant to Rule 11 of the Federal Rules of Criminal
Procedure, the United States Attorney's Office for the Eastern
District of New York (the "Office") and JACK PALAZZO (the
"defendant") agree to the following:

       1.   The defendant will plead guilty to a one-count
information to be filed in the above captioned case, charging
violations of 18 U.S.C. § 1956(h).  The count carries the following
statutory penalties:

       Count One - Money Laundering Conspiracy

         a.   Maximum term of imprisonment: 20 years
            (18 U.S.C. § 1956(a)(1)(B)(i)).

         b.   Minimum term of imprisonment: 0 years
            (18 U.S.C. § 1956(a)(1)(B)(i)).

         c.   Maximum supervised release term: 3 years, to
            follow any term of imprisonment; if a
            condition of release is violated, the
            defendant may be sentenced to up to 2 years
            without credit for pre-release imprisonment or
            time previously served on post-release
            supervision
            (18 U.S.C. §§ 3583 (b),(e)).

2

    d.    Maximum fine: the greater of $500,000 or
        twice the value of the property involved
        (18 U.S.C. § 1956(a)(1)(B)(i)).

    e.    $100 special assessment
        (18 U.S.C. § 3013).

    f.    Other penalties: Criminal Forfeiture
        as provided in paragraphs 3(g) through 3(u)
        (18 U.S.C. § 982).

    2.    The defendant understands that although imposition of a sentence in accordance with the United States Sentencing Guidelines (the "Guidelines") is not mandatory, the Guidelines are advisory and the Court is required to consider any applicable Guidelines provisions as well as other factors enumerated in 18 U.S.C. § 3553(a) to arrive at an appropriate sentence in this case. The Office will advise the Court and the Probation Department of information relevant to sentencing, including all criminal activity engaged in by the defendant, and such information may be used by the Court in determining the defendant's sentence. Based on information known to it now, the Office will not oppose a downward adjustment of three levels for acceptance of responsibility under U.S.S.G. § 3E1.1.

    3.    The defendant will provide truthful, complete and accurate information and will cooperate fully with the Office. This cooperation will include, but is not limited to, the following:

    a.    The defendant agrees to be fully debriefed and
        to attend all meetings at which his presence

is requested, concerning his participation in and knowledge of all criminal activities.

b.   The defendant agrees to furnish to the Office all documents and other material that may be relevant to the investigation and that are in the defendant's possession or control and to participate in undercover activities pursuant to the specific instructions of law enforcement agents or this Office.

c.   The defendant agrees not to reveal his cooperation, or any information derived therefrom, to any third party without prior consent of the Office.

d.   The defendant agrees to testify at any proceeding in the Eastern District of New York or elsewhere as requested by the Office.

e.   The defendant consents to adjournments of his sentence as requested by the Office.

f.   The defendant agrees to cooperate fully with the Internal Revenue Service in the ascertainment, computation and payment of his correct federal income tax liability for the years 2001-2006.  To that end, the defendant will file amended tax returns for the years 2001-2006 prior to imposition of sentence and consents to the disclosure to the Internal Revenue Service of information relating to his financial affairs that is in the possession of third parties.

g.   The defendant acknowledges that he owns property which is subject to forfeiture as a result of his violation of 18 U.S.C. § 1956 as alleged in the information.  The defendant consents to the forfeiture of all of his right, title and interest in: (i) a money judgment in the amount of $150,000 (the "Forfeiture Money Judgment") which represents property involved in the money laundering offense.

h.   The defendant agrees to take whatever steps are necessary to ensure full payment of

4

the Forfeiture Money Judgment.

i. The Forfeiture Money Judgment shall be paid 90 days from the date the defendant enters his guilty plea (the "Due Date"). The failure of the defendant to pay the Forfeiture Money Judgment on or before the Due Date shall constitute a material breach of this agreement. Interest on any unpaid balance of the Forfeiture Money Judgment shall begin to accrue after the Due Date at the rate of interest set forth in Title 18, United States Code, Section 3612(f)(2).

j. The defendant agrees to secure the Forfeiture Money Judgment, in-part, with his interest in real property and premises known as 1307 Kings Way, Carmel, New York 10512 (the "Kings Way Property").

k. The defendant further agrees that until the Forfeiture Money Judgment is fully satisfied, he shall insure that the expenses associated with the Kings Way Property shall be paid and kept current. These expenses shall include, but shall not be limited to, the following: all real property taxes, mortgages liens, real and personal property insurance, liability insurance, fire insurance, utility charges and any fees and/or expenses.

l. The defendant further agrees that until the Forfeiture Money Judgment is fully satisfied, he shall not, directly or indirectly, engage in any effort to transfer, sell, assign, pledge, hypothecate, encumber, or dispose of in any manner, or cause to be transferred, sold, assigned, hypothecated, encumbered, or disposed of in any manner any of the Kings Way Property without the express written approval of the United States. Until the Forfeiture Money Judgment is fully satisfied, any conveyance of any property which does not comply with the terms of this paragraph shall be deemed fraudulent, null, void and of no legal effect.

m.   No contract of sale in connection with the Kings Way Property may be entered into by the defendant without the prior written approval by the United States Attorney's Office for the Eastern District of New York, which approval shall include not only the selling price, but also all fees and costs connected with the sale.

n.   Any proceeds from such sale of defendant's interest in the Kings Way Property, after payment of any approved liens, fees and expenses, shall be applied to any unpaid portion of the Forfeiture Money Judgment and thereafter, any excess proceeds shall be paid to the defendant. The defendant agrees that the Forfeiture Money Judgment operates as a fully enforceable lien against the Kings Way Property to the extent that it remains unsatisfied. This Office shall be notified of the date of any closing for any such sale. The defendant agrees to have the proceeds from such sale, less the approved liens, fees and expenses, made payable to the United States Department of Treasury, as set forth below.

o.   The defendant agrees to make all payments to satisfy the Forfeiture Money Judgment by certified or bank check, payable to the "United States Department of Treasury," and shall cause said checks to be sent by overnight air express delivery to Assistant United States Attorney Brendan G. King, United States Attorney's Office, Eastern District of New York, 271 Cadman Plaza East, 7th Floor, Brooklyn, New York 11201, with the criminal docket number noted on the face of each check.

p.   The defendant agrees that the Forfeiture Money Judgment constitutes property involved in the defendant's violation of 18 U.S.C. § 1956, and/or substitute assets as defined in 21 U.S.C. § 853(p), and thus is subject to forfeiture to the United States. The defendant consents to the forfeiture of the Forfeiture Money Judgment to the United States, pursuant to 18 U.S.C. § 982. The defendant agrees to the entry of a Preliminary Order of Forfeiture

6

as to the Forfeited Money Judgment.

q.  The failure of the defendant to forfeit the
    Forfeiture Money Judgment as required under
    this agreement, including the failure of the
    defendant to execute any document to
    accomplish same on timely notice to do so,
    shall constitute a material breach of this
    plea agreement.  Upon such a breach, the
    defendant will not be entitled to withdraw the
    plea, but the Office may bring additional
    criminal charges against the defendant.  Upon
    such a breach, the Office may, among other
    things, exercise the remedies outlined in this
    agreement and in the Preliminary Order of
    Forfeiture.  If forfeiture is not accomplished
    as provided above, the defendant consents to
    the forfeiture of any other property of his,
    up to the value of the Forfeiture Money
    Judgment not received, pursuant to 21 U.S.C. §
    853(p), the Federal Debt Collection Procedure
    Act, or any other applicable law.

r.  The defendant knowingly and voluntarily waives
    his right to any required notice concerning
    the forfeiture, including, but not limited to,
    notice contained in an indictment or
    information that the government will seek the
    forfeiture of property as part of any
    sentence.  In addition, the defendant
    knowingly and voluntarily waives his right to
    a jury trial on the forfeiture of the
    Forfeiture Money Judgment, and waives all
    constitutional, legal and equitable defenses
    to the forfeiture of the Forfeiture Money
    Judgment, including, but not limited to, any
    defenses based on principles of double
    jeopardy, the ex post facto clause of the
    Constitution, the Eighth Amendment of the
    Constitution (including a claim of excessive
    fines), the statute of limitations, or venue.

s.  The defendant represents that he has disclosed
    all of his assets to the United States on the
    financial statement dated December 28, 2007
    and entitled "United States Department of
    Justice Financial Statement" (hereinafter, the
    "Financial Statement"), a copy of which is

attached hereto as Exhibit A. The defendant agrees that a failure to disclose assets on the Financial Statement constitutes a material breach of this agreement. In addition, the defendant consents to the forfeiture to the United States of all assets in which he has an interest, but failed to disclose on the Financial Statement, if any pursuant to 18 U.S.C. § 982, as property involved in the offense of conviction.

t. Should undisclosed assets which the defendant owns or in which the defendant has an interest be discovered, the defendant knowingly and voluntarily waives his right to any required notice concerning the forfeiture of said assets. The defendant agrees to execute any documents to effectuate the forfeiture of said assets.

u. The defendant agrees that the forfeiture of the Forfeiture Money Judgment is not to be considered a payment of a fine or a payment on any income taxes that may be due.

4. The Office agrees that:

a. Except as provided in paragraphs 1, 8 and 9, no criminal charges will be brought against the defendant for his heretofore disclosed participation in criminal activity involving a conspiracy to commit mail fraud and money laundering designed to obtain illegal kickbacks from construction contractors while the defendant was employed by the Consolidated Edison Company of New York, Inc., from January 2001 to March 2007.

b. No statements made by the defendant during the course of this cooperation will be used against him except as provided in paragraphs 2, 3 and 4.

5. The defendant agrees that the Office may meet with and debrief him without the presence of counsel, unless the defendant specifically requests counsel's presence at such

8

debriefings and meetings.   Upon request of the defendant, the Office will endeavor to provide advance notice to counsel of the place and time of meetings and debriefings, it being understood that the Office's ability to provide such notice will vary according to time constraints and other circumstances.   The Office may accommodate requests to alter the time and place of such debriefings.   It is understood, however, that any cancellations or reschedulings of debriefings or meetings requested by the defendant that hinder the Office's ability to prepare adequately for trials, hearings or other proceedings may adversely affect the defendant's ability to provide substantial assistance.   Matters occurring at any meeting or debriefing may be considered by the Office in determining whether the defendant has provided substantial assistance or otherwise complied with this agreement and may be considered by the Court in imposing sentence regardless of whether counsel was present at the meeting or debriefing.

6.   If the Office determines that the defendant has cooperated fully, provided substantial assistance to law enforcement authorities and otherwise complied with the terms of this agreement, the Office will file a motion pursuant to U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e) with the sentencing Court setting forth the nature and extent of his cooperation.   Such a motion will permit the Court, in its discretion, to impose a sentence below any applicable mandatory minimum sentence.   In this connection, it is understood that a good faith determination by the Office as to

whether the defendant has cooperated fully and provided substantial assistance and has otherwise complied with the terms of this agreement, and the Office's good faith assessment of the value, truthfulness, completeness and accuracy of the cooperation, shall be binding upon him.  The defendant agrees that, in making this determination, the Office may consider facts known to it at this time.   The Office will not recommend to the Court a specific sentence to be imposed.  Further, the Office cannot and does not make a promise or representation as to what sentence will be imposed by the Court.

7.   The defendant agrees that with respect to all charges referred to in paragraphs 1 and 10(a) he is not a "prevailing party" within the meaning of the "Hyde Amendment," 18 U.S.C. § 3006A note, and will not file any claim under that law. The defendant waives any right to additional disclosure from the government in connection with the guilty plea.   The defendant agrees to pay the special assessment by check payable to the Clerk of the Court at or before sentencing.

8.   The defendant must at all times give complete, truthful, and accurate information and testimony, and must not commit, or attempt to commit, any further crimes.  Should it be judged by the Office that the defendant has failed to cooperate fully, has intentionally given false, misleading or incomplete information or testimony, has committed or attempted to commit any further crimes, or has otherwise violated any provision of this

10

agreement, the defendant will not be released from his plea of guilty but this Office will be released from its obligations under this agreement, including (a) not to oppose a downward adjustment of three levels for acceptance of responsibility described in paragraph 2 above, and (b) to file the motion described in paragraph 6 above. Moreover, this Office may withdraw the motion described in paragraph 6 above, if such motion has been filed prior to sentencing. The defendant will also be subject to prosecution for any federal criminal violation of which the Office has knowledge, including, but not limited to, the criminal activity described in paragraph 4 above, perjury and obstruction of justice.

9. Any prosecution resulting from the defendant's failure to comply with the terms of this agreement may be premised upon, among other things: (a) any statements made by the defendant to the Office or to other law enforcement agents on or after April 10, 2007; (b) any testimony given by him before any grand jury or other tribunal, whether before or after the date this agreement is signed by the defendant; and (c) any leads derived from such statements or testimony. Prosecutions that are not time-barred by the applicable statutes of limitation on the date this agreement is signed may be commenced against the defendant in accordance with this paragraph, notwithstanding the expiration of the statutes of limitation between the signing of this agreement and the commencement of any such prosecutions. Furthermore, the defendant

11

waives all claims under the United States Constitution, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal statute or rule, that statements made by him on or after April 10, 2007 or any leads derived therefrom, should be suppressed.

10.  This agreement does not bind any federal, state, or local prosecuting authority other than the Office, and does not prohibit the Office from initiating or prosecuting any civil or administrative proceedings directly or indirectly involving the defendant.

11.  No promises, agreements or conditions have been entered into other than those set forth in this agreement, and none will be entered into unless memorialized in writing and signed by all parties.  This agreement supersedes any prior promises,

12

agreements or conditions between the parties.  To become effective,

this agreement must be signed by all signatories listed.

Dated:      Brooklyn, New York
            ~~July~~ September 4, 2008

                              BENTON J. CAMPBELL
                              United States Attorney
                              Eastern District of New York

                    By:    _____
                           Monica E. Ryan
                           Assistant United States Attorney


                    Approved by:

                           _____
                           Richard T. Faughnan
                           Chief, Public Integrity Section


I have read the entire agreement and discussed it with my attorney. I
understand all of its terms and am entering into it knowingly and
voluntarily.

_____
JACK PALAZZO
Defendant

Approved by:

_____
Brian MacCreery, Esq.
Counsel to Defendant

EXHIBIT C

*United States Attorney*
*Eastern District of New York*

DDB

271 Cadman Plaza East
Brooklyn, New York 11201

April 8, 2011

**FILED UNDER SEAL**
**BY HAND**

The Honorable Allyne R. Ross
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:  United States v. Jack Palazzo
Criminal Docket No. 09-459(ARR)

Dear Judge Ross:

The defendant Jack Palazzo will soon be sentenced by this Court. This letter is respectfully submitted pursuant to section 5K1.1 of the United States Sentencing Guidelines. For the reasons discussed below, the government respectfully moves pursuant to U.S.S.G. § 5K1.1 to allow the Court, in its discretion, to take the defendant's substantial assistance to the government into account in sentencing the defendant, notwithstanding the applicable advisory Sentencing Guidelines range.

I.  Background

The defendant took bribes as a Consolidated Edison of New York ("Con Ed") inspector. The details of the defendant's criminal conduct were set forth, complete with estimated dollar amounts, during the defendant's testimony as a cooperating government witness in United States v. Nathaniel Ham, CR 10-336(ARR). The defendant was arrested for receiving bribes in violation of 18 U.S.C. §666(a)(2) in March 2007 and pleaded guilty pursuant to a cooperation agreement with the government on July 13, 2009. He testified in the Ham trial in March 2011 and Ham was convicted at the conclusion of the trial.

II.  The Defendant's Cooperation

The defendant was an excellent cooperator who provided the government with substantial assistance not only in the prosecution and conviction of Nathaniel Ham, but also in the prosecutions of Con Ed inspectors James Coffin and Thomas Fetter, both of whom have pleaded guilty (09-CR-481(ARR)) and are awaiting sentence.

2

The defendant was arrested on March 15, 2007 and immediately agreed to cooperate with the government's investigation of various Con Ed inspectors and contractors who were involved in payoff schemes.  As a first step in his assistance, the defendant was debriefed several times by case agents.  During those meetings, the defendant provided extensive information about the schemes that he and other Con Ed inspectors were involved in.  The defendant also participated in recorded conversations with Con Ed inspectors William Shannon, James Coffin and Thomas Fetter, all of whom were subsequently arrested and pleaded guilty.

The most valuable assistance the defendant provided pertained to the prosecution and trial of Nathaniel Ham.  As the Court heard during Ham's recent trial, the defendant was taking bribes from the contractor Judlau Contracting Inc., along with Shannon and Fetter.  Ham, Shannon's brother-in-law, provided the means by which the payoffs from Judlau were able to be made via checks, that were then laundered through Ham's accounts at his credit union.

As the Court is aware, Shannon had also become a government cooperator after his arrest n March 2007.  Shannon was slated to be an important government witness at the *Ham* trial, but just weeks before jury selection, he advised the government that he was no longer willing to testify or engage in any further meetings with the government.  At that point, the defendant became an important witness because he was then the only one who could testify about Ham's connection to the scheme with Judlau, and how Ham had provided both the means for Judlau to issue payoff checks and an account through which the checks could be cashed.

When the defendant testified during *Ham* trial, he provided powerful evidence against Ham.  In particular, he was able to establish Ham as the bridge between the bribery scheme negotiated between Shannon and Judlau, and the account activity at the credit union where Ham structured and laundered the resulting bribery proceeds.  The defendant presented that testimony in a simple, blunt, unadorned manner that rendered the testimony that much more credible and he maintained that manner throughout cross examination that did not substantially discredit or even limit the defendant's evidence.  Finally, the defendant, in the government's view, appeared to be genuinely remorseful for his criminal conduct and he conveyed his remorse to the

3

government and the jury.  The government believes that the
defendant was a very strong factor in the jury returning a
verdicts of guilty against Ham on both counts.

III. <u>Conclusion</u>

      Therefore, the government moves pursuant to section
5K1.1 of the United States Sentencing Guidelines to allow the
Court, in its discretion, to depart from the Sentencing
Guidelines in imposing sentence on Jack Palazzo because of his
substantial assistance to the government in the prosecution and
conviction of Nathaniel Ham for paying bribes.

                        Respectfully submitted,

                        LORETTA E. LYNCH
                        United States Attorney

By:                    
                        Daniel D. Brownell
                        Assistant U.S. Attorney
                        (718) 254-6392

cc: John Brian Macreery, Esq.