UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
UNITED STATES OF AMERICA,

              - against -

JACK PALAZZO,

                              Defendant.
------------------------------------------------------------------x

**PRE-SENTENCE MEMORANDUM**
Docket No.: 09-CR-459 (ARR)


# DEFENDANT'S PRE-SENTENCE MEMORANDUM

Respectfully submitted,

Deren, Genett & Macreery, P.C.
Attorneys for Jack Palazzo

By: _____
John Brian Macreery, Esq. (8745)
Office and Post Office Address
28 Edgemont Road
Katonah, New York 10536
(914) 232-8174

To: Daniel D. Brownell, AUSA
    United States Attorney
    Eastern District of New York
    271 Cadman Plaza East, 7th Floor
    Brooklyn, NY 11201

    United States Probation Department
    Eastern District of New York
    147 Pierrepont Street
    Brooklyn, NY 11201

## PRELIMINARY STATEMENT

This submission constitutes the pre-sentence memorandum offered on behalf of the defendant, Jack Palazzo, in the above captioned matter.

It is submitted to correct serious mistakes in the pre-sentence investigation report prepared by the United States Probation Department.

It is also submitted to supplement the USSG Section 5K 1.1 letter and motion submitted by the United States Attorney's Office to the court, which is completely omitted from the Probation Department report.

Mindful that the court is completely aware of Mr. Palazzo's cooperation with the government in the Judlau money laundering scheme (based upon Mr. Palazzo's testimony in United States v. Nathaniel Hamm) this memorandum will focus predominantly on Mr. Palazzo's instrumental cooperation in the Felix bribery scheme.

## STATEMENT OF FACTS

The errors, inaccuracies and mistakes in the pre-sentence investigation report concerning Jack Palazzo are so numerous and pervasive that it is difficult to know where to start.

Accordingly, this memorandum will attempt to address the most serious mistakes chronologically in the order they appear in the pre-sentence investigation report.

At page 4 of the report, the Probation Department alleges:

> "Investigation into the instant offense commenced in early 2008 by
> ... when defendant and Anselmo Saiz, the principal owner of Felix
> Industries informed agents about the illegal kickback scheme."

In fact, the investigation of the "instant offense" must have occurred before 2008 because Jack Palazzo was arrested on March 15, 2007. In fact, the government's investigation of the bribery of Con Edison employees by Felix Associates (hereinafter the "Felix bribery scheme") commenced on March 15, 2007, the date that Jack Palazzo was arrested.

2

Jack Palazzo spent at least six hours with government agents on the day of his arrest completely, freely and voluntarily advising the various federal law enforcement agencies of his involvement in both the Judlau Contracting money laundering scheme and the Felix bribery scheme. As set forth herein below, Jack Palazzo was instrumental in exposing the Felix bribery scheme to the federal authorities, who at the time were investigating the Judlau money laundering scheme. It was Mr. Palazzo's cooperation on the very day of his arrest which opened up the government's well run and successful investigation and prosecution of the Felix bribery scheme. (Simply stated, Anselmo Saiz did not simply walk into the government offices in early 2008 to advise federal authorities that he had been bribing Con Ed employees and wanted to be prosecuted for his wrong doing.)

At page 5 (and throughout the pre-sentence investigation report) the Probation Department lumps numerous Felix bribery payments in which Jack Palazzo had no knowledge or involvement. Felix Associates paid many different Con Ed employees differing amounts based upon differing agreements, depending upon the specific Con Ed group of employees associated with each such project. For instance, Jack Palazzo did not receive non-monetary payoffs, i.e. tickets to a New York Giants/Dallas Cowboy football game and a Blackberry Curve in exchange for approving the inflated invoices that Felix Associates submitted to Con Edison for payment.

At page 5 of the pre-sentence investigation report, it is stated: "Felix Associates owner, Anselmo Saiz, under the supervision of law enforcement agents, wore a recording device while meeting with the defendants and made payoffs to them ranging from $1,000 to $5,000 on each occasion."

This is not correct. Anselmo Saiz never wore a recording device in conversations with Jack Palazzo. Jack Palazzo never spoke to Anselmo Saiz.

3

Contrary to the contentions in the pre-sentence investigation report, Anselmo Saiz's cooperation did not lead to the prosecution of Jack Palazzo. To the contrary, Jack Palazzo's cooperation led to the prosecution of Anselmo Saiz, which led to the prosecution of the other Con Ed employees who received bribes from Mr. Saiz.

In paragraph 8 at page 5, the pre-sentence investigation report maintains that Jack Palazzo received kickbacks in a money laundering scheme involving Roadway Contracting. Jack Palazzo was not involved in any such bribery and/or money laundering scheme involving Roadway Contracting.

At page 11 of the pre-sentence investigation report, the Probation Department sets forth in general terms what appears to be some information concerning the Felix Associates bribery scheme as it pertained to James Coffin, William Shannon, Jack Palazzo and Thomas Fedder. The bribes were paid to "Coffin and Fedder" every four to six weeks. Jack Palazzo understood that Mr. Saiz, known to him as "Zep" made the payments to Coffin and William Shannon.

The report accurately sets forth that the work was "unnecessary construction". Although it may have been unnecessary, the work was in fact performed. I also point out that various of the DDC projects expanded the scope of the original contract. This is not unusual in the industry. On many occasions, contracts were enlarged in scope because it was determined that additional work needed to be performed. The City of New York first made the determination that more work needed to be done, and when the City of New York made that determination, the scope of the work to be done by/for Con Ed correspondingly increased.

At page 11 of the pre-sentence investigation report, it is stated:

"Shannon was not involved in the undercover investigation."

Upon information and belief, William Shannon was in fact involved in the undercover investigation of the Felix bribery scheme. Mr. Shannon may not have been involved in the

4

undercover investigation of the Judlau Contracting money laundering scheme, because his brother in law, Nathanial Hamm, was a criminal participant in that scheme.

At page 13 of the pre-sentence investigation report, it is stated:

> "Between 2001 and 2005, Thomas Fedder and his Con Ed colleagues William Shannon and Jack Palazzo received bribe payments from Judlau Construction in exchange for preparing and approving Judlau work invoices and <u>expediting payments</u> to the company from Con Ed on a project in the Wall Street area of Manhattan."

This statement is not correct. The Judlau money laundering scheme occurred between approximately 2001 and continued through mid-2007. Jack Palazzo was arrested in March of 2007. He cooperated with the government, wearing a wire to record conversations with Thomas Fedder and William Shannon. (Mr. Palazzo also wore a wire to record a conversation with James Coffin to gather evidence for the government on the Felix bribery scheme.)

The important accuracy in the pre-sentence investigation report acknowledges that the bribery money laundering scheme was to expedite payments, and not to receive payments for work not performed.[1]

As the court presided over the trial in United States v. Nathaniel Hamm, 10-CR-336, the court is totally conversant and aware of the facts underlying this scheme and no further comment from defense counsel is required.

At page 13 of the pre-sentence investigation report, it is claimed that Jack Palazzo and William Shannon engaged in a bribery scheme involving a "Con Ed funded project on the West Side Highway." Jack Palazzo was not involved in any such scheme. Accordingly, Jack Palazzo did not receive $750,000.00 from any "West Side Highway" project, because he was not engaged in any such activity.

---

[1] It should be noted that Con Edison has sued Felix Industries to recover monies for work not performed or for inflated invoices. Based upon conversations between defense counsel and the civil attorneys for Con Edison they have not brought a lawsuit against Judlau Contracting, perhaps for this very reason.

5

At page 14, the pre-sentence investigation report states:

> "The government maintains that since Con Ed suffered a pecuniary loss, restitution should include the amount by which Con Ed overpaid the Felix Associates ($1,794,754.00) as detailed in the chart below."

First of all, it is noted that Jack Palazzo was not involved in any of the listed projects. Those projects were the schemes of other Con Ed employees. More important, however, the United States Attorney's Office does not seek restitution for this overpayment. The United States Attorney's Office has submitted a memorandum, with respect to restitution, dealing with a recoupment of "dishonest employee" salaries.

The government has advised the court that Con Edison, pursuant to a civil settlement with Felix Associates, is receiving all $1,794,754.00 in overpayments and also the legal/investigation fees in relation to the case of $238,367.33. As understood by Jack Palazzo and his counsel, Con Edison is being repaid $2,033,120.30 by Felix Associates.

As set forth herein below, it was Jack Palazzo's cooperation which opened up this investigation and has provided the opportunity to the government to investigate and prosecute this wrong doing which has led to Con Ed's recovery.

At pages 15 and 16 of the pre-sentence investigation report, it is stated that Jack Palazzo received "$750,000.00" and that additional "unknown" monies as the overcharge payments made by Con Ed with their respective construction projects.

This is not correct. Jack Palazzo did not <u>individually</u> receive $750,000.00. Furthermore, the government is aware, based on Jack Palazzo's cooperation, of the individual benefit he has received. The government has sought and received a $150,000.00 forfeiture judgment in this case. Finally, the probation report refers to "overcharge payments". Overcharge payments were not made in connection with the Judlau money laundering scheme or that portion of the Felix bribery scheme in which Mr. Palazzo was involved.

6

At page 17 of the pre-sentence investigation report, it is stated:

"Jack Palazzo was arrested on March 15, 2007, without incident. He made no immediate post arrest statement."

Although Jack Palazzo was arrested on March 15, 2007, without incident, he did in fact make six hours worth of post arrest statements to law enforcement fully detailing his involvement in the Judlau money laundering scheme and the Felix Associates bribery scheme in which he was involved. Jack Palazzo agreed immediately to cooperate with the government and to assist the government in the investigation and prosecution of both these separate schemes.

At page 18 of the pre-sentence investigation report, the probation department continues the mistaken and incorrect statement that Jack Palazzo was involved in a bribery scheme involving a Con Ed funded project on the West Side Highway. All of the statements in that regard are incorrectly referred to on pages 18 and on pages 26-27 of the pre-sentence investigation report

The court is well aware, based on Mr. Palazzo's cooperation and testimony in United States v. Nathanial Hamm of the full extent of his involvement in other matters, as he has freely and voluntarily admitted the same.

At page 27 and 28 of the pre-sentence investigation report, the probation department misleads the court with respect to the events that took place at and during Jack Palazzo's pre-sentence interview. The report claims:

"Upon the request of defense counsel, no questions were asked regarding the defendant's participation in the instant offense." This mischaracterizes what occurred.

Both I and Mr. Palazzo advised the probation officer that Jack Palazzo was cooperating with the government, had fully told the government his involvement over many debriefings and

7

interviews. It was suggested that the probation officer get this information from the United States Attorney's Office.

Furthermore, because Mr. Palazzo was cooperating with the government and because he had already testified in the case of United States v. Nathanial Hamm, it was unnecessary to have a detailed recounting of his involvement at the pre-sentence interview.

The pre-sentence investigative report also contains numerous errors with respect to Jack Palazzo's personal history (characteristics).

Contrary to the statement in paragraph 92 of the report, Jack Palazzo never stated that he was raised in "a lower middle income household". He did state that finances were difficult, but that there was always food on the table. His mother was not diagnosed with cancer in 2001. Her final illness was diagnosed in 2007 approximately one month before she died.

In paragraph 93, it should be noted that Patricia Palazzo is 56 years old, not 65 years old. Jack Palazzo, Jr. suffers from chronic pain in his left arm following a motorcycle accident.

With regard to paragraph 97 of the pre-sentence investigative report, Mr. Palazzo vacationed in Cancun, Mexico once in 2005 (not twice).

With respect to paragraph 100, Jack Palazzo had three surgeries for the injury to his left eye in 1975. These surgeries included sewing his eye together (the first surgery), removing the stitches from the first operation (the second surgery) and cataract removal (the third surgery). These surgeries occurred within one year of the accident. Mr. Palazzo again had surgery approximately 10 years ago, a lens implant surgery. He now can see out of his left eye following that surgery.

With respect to paragraph 102, Mr. Palazzo's sleep apnea was diagnosed when he was approximately 45 years old.

With respect to paragraph 116 of the report, Mr. Palazzo was not involved in the criminal offense from March 2007 through December 2008. Instead, Mr. Palazzo was actively cooperating with the United States government in the investigation and prosecution of the criminal activity during that period of his employment. The court is fully aware of the scope of Mr. Palazzo's criminal activity while employed at Con Ed, based upon his testimony at the Nathanial Hamm trial.

With respect to Mr. Palazzo's financial condition, the two HSBC accounts (checking and savings) listed at page 36 of the report are his wife's accounts.

With respect to the real estate he owns, Jack Palazzo believes that the home he owns jointly with his wife at 1307 Kings Way, Carmel, New York has a market value greater than $71,800.00. Mr. Palazzo does not know whether the value of the home exceeds the mortgage.

At paragraph 123, Mr. Palazzo does not own property jointly with his wife at 112 Cypress Point Court, 101-A Myrtle Beach, South Carolina; that property was sold at a short sale over a year ago. Mr. Palazzo and his wife currently pay $78.00 per month to satisfy the short sale differential, which was not forgiven by a second lender.

With respect to paragraph 124 of the report, Mr. Palazzo knows that he is a named beneficiary in the Last Will and Testament of his maternal uncle Donato Api. Mr. Api is no longer competent and would not be able to change his Will. Mr. Api is currently receiving various medical care. Mr. Palazzo is not aware whether the medical expenses will totally consume Mr. Api's estate. However, Mr. Palazzo believes that that estate may have value.

With respect to paragraph 125 of the report, Mr. Palazzo does not owe an outstanding mortgage balance of approximately $207,920.00 on the South Carolina property. This property was sold at a short sale. Mr. Palazzo is required to pay $78.00 a month for 10 years to satisfy the final indebtedness, after short sale.

With respect to the defendant's bankruptcy listed in paragraph 126, Mr. Palazzo verified, prior to filing, that any debt to the government would not be discharged; this was confirmed by his bankruptcy attorney, Thomas Genova, Esq. The bankruptcy filing does not discharge any debt Mr. Palazzo may owe to Con Edison. Mr. Palazzo was aware of that, and was aware of that before he filed in bankruptcy.

With respect to cash flow, Mr. Palazzo reported income of $1,012.00 every two weeks (as opposed to every month).

## STATEMENT OF FACTS

Jack Palazzo is a former Consolidated Edison Company of New York (Con Ed) construction representative. Mr. Palazzo worked for Con Ed from May 6, 1974 through December 31, 2008.

From January 2001 through March 2007, Mr. Palazzo was engaged with certain other Con Ed employees in two separate and distinct bribery conspiracies. One scheme involved Judlau Contracting, Inc. ("Judlau") and the other involved Felix Associates, LLC ("Felix").

From January 1, 2001 through March 2007, Jack Palazzo together with Thomas Fedder and William Shannon were involved in a money laundering bribery operation with Judlau through March 2007. Jack Palazzo together with James Coffin, Thomas Fedder and William Shannon were involved in a bribery/kickback operation with Felix.

In March of 2007, Jack Palazzo was arrested by federal agents immediately after a meeting with Paul Critelli of Judlau. Mr. Palazzo was arrested in Manhattan after receiving an envelope containing bribery money which had been laundered through an account at a credit union located in the Eastern District of New York. Upon his arrest, the government sought Mr. Palazzo's cooperation in the government's investigation of the Judlau money laundering operation. On the date of his arrest, Mr. Palazzo agreed to cooperate with the government, not

only in connection with the Judlau money laundering scheme, but also with an investigation of the bribes that he had received from Felix.

Mr. Palazzo's cooperation is well known to this Court based upon his detailed testimony in the case of United States v. Nathaniel Hamm, 10 CR 336 (ARR). Mr. Palazzo agreed to obtain evidence for the government by wearing a hidden audio recorder and engaging in conversations with Mr. Coffin, Mr. Fetter and Mr. Shannon. Prior to engaging his ConEd coworkers in these conversations, Mr. Palazzo fully briefed the government on the scope of the criminal matters in which he was personally involved and the activities of his coworkers in both the Judlau and the Felix schemes.

At the time of Mr. Palazzo's arrest, the government was actively pursuing its investigation of the Judlau money laundering conspiracy. Mr. Palazzo's cooperation provided information and evidence which opened the door to a new investigation of the Felix bribery conspiracy.

Although the government has never revealed to me their investigative techniques, it appears obvious that Mr. Palazzo's cooperation led to William Shannon's (initial) cooperation. Mr. Shannon was/is the brother-in-law of Nathanial Hamm who worked at the credit union through which the bribery money was laundered. Mr. Shannon also knew an official at Felix (Mr. Saiz) who was the Felix contact man for the Felix bribery payments.

It is my understanding that Jack Palazzo's cooperation provided assistance to the government to "flip" Mr. William Shannon. Mr. Shannon in turn provided the government with the ability to "flip" Mr. Saiz. Mr. Saiz then provided the basis for the government to make cases against all the other ConEd employees from whom restitution is sought by their former employer.

On July 13, 2009 Jack Palazzo pleaded guilty to the one count information charging him with money laundering conspiracy. He continued to cooperate with the government.

At some point in the course of the government's investigation, Con Edison learned that Jack Palazzo was cooperating with federal law enforcement agencies in the investigation of the crimes committed against Con Ed.

After Mr. Palazzo's plea, a civil suit was instituted against him by Con Edison to recover their losses, including their costs for investigating the Felix and/or Judlau bribery schemes. Although not required, Con Edison gratuitously disclosed Jack Palazzo's cooperation with the government in the complaint filed in Supreme Court New York County under Index No.: 651105/2010. In this public record, Con Edison gave notice to all the Con Ed defendants that Jack Palazzo was cooperating with the government.

Jack Palazzo provided complete cooperation for the government from the date of his arrest, to date. When William Shannon refused to testify against his brother-in-law, the government sought Mr. Palazzo's testimony at the trial of Nathanial Ham. At that trial Mr. Palazzo was asked to testify about all of his criminal activity by the government and Mr. Palazzo complied.

As set forth in the government's Section 5K1.1 letter/motion to your Honor dated April 8, 2011, Jack Palazzo provided "powerful evidence against Hamm."

I draw the court's attention to that letter, which speaks for itself.

## LEGAL ARGUMENT

Section 5K 1.1 of the sentencing guidelines provides:

> "Upon motion of the government stating that the defendant has provided substantial assistance in the investigation of prosecution of another person who has committed an offense, the court may depart from the guidelines."

The appropriate reduction shall be determined by the court for reasons stated that may include, but are not limited to, consideration of the following:

> 1) The court's evaluation of the significance and usefulness of the defendant's assistance taking into consideration the government's evaluation of the assistance rendered;
>
> 2) The truthfulness, completeness and reliability of any information or testimony provided by the defendant;
>
> 3) The nature and extent of the defendant's assistance;
>
> 4) Any injury suffered or any danger or risk of any injury to the defendant or his family resulting from his assistance;
>
> 5) The timeliness of the defendant's assistance.

The United States attorney for the Eastern District of New York has already provided the motion for departure from the guidelines in the letter of April 8, 2011.

In this submission, we will amplify on the reasons set forth by the government in its April 8, 2011 letter.

### 1. The Significance and Usefulness of the Defendant's Assistance

The government has represented that Jack Palazzo "was an excellent cooperator" who provided the government with substantial assistance not only in the prosecution and conviction of Nathanial Hamm, but also in the prosecutions of Con Edison inspectors James Coffin and Thomas Fedder both of whom have pleaded guilty. I would only add that Mr. Palazzo provided substantial assistance in the successful prosecution of William Shannon. Mr. Palazzo, at the request of the government, wore a recording device and recorded conversations with William Shannon. These conversations were very incriminating and, it is submitted, assisted the government in its prosecution of the Felix bribery scheme.

At the time of his arrest, the government was investigating the Judlau money laundering scheme. It was not investigating the bribes paid by Felix to multiple Con Ed employees. Mr. Palazzo's immediate cooperation on the date of his arrest commenced the government's investigation into the Felix bribery scheme which has led to the successful prosecution of 14 Con Edison employees and the recovery by Con Edison of $2,033,120.30 in overpayments and investigation expenses.

2. The Truthfulness, Completeness and Reliability of the Information and Testimony

The government has stated that Jack Palazzo provided complete cooperation in the United States attorney's April 8, 2011 USSG Section 5K 1.1 letter. Mr. Palazzo not only provided the government with valuable information concerning both the Judlau money laundering scheme and the Felix bribery schemes, but he also agreed to assist the government in obtaining evidence by wearing tape recording equipment and testifying on behalf of the government. Mr. Palazzo engaged in numerous supervised recorded conversations with William Shannon, Thomas Fedder and James Coffin. Mr. Palazzo also testified on behalf of the government in United States v. Hamm.

The government believes he has been truthful, and that he is truly remorseful for his crimes. He has advised me that he is truly sorry for his crimes and the pain he has caused his wife and sons.

The jury also found Mr. Palazzo truthful by their guilty verdict in the Hamm case.

3. The Nature and Extent of the Defendant's Assistance

The full nature and extent of the defendant's assistance has been set forth herein above. It is only added that Mr. Palazzo did everything he was capable of doing for the government.

4. <u>Any Risk of Injury to the Defendant Resulting from his Assistance</u>

Wearing a wire to obtain evidence for the government always involves risk to the cooperating defendant or witness. I say this as a former prosecutor with the Investigations Division of the Westchester County District Attorney's Office.

Con Edison prematurely, and without necessity, published Jack Palazzo's cooperation with the government. Mr. Palazzo's cooperation with the government is now well known throughout the ranks at Con Edison; Mr. Palazzo's two sons who are both Con Edison employees can attest to that fact.

There are many reasons why a confidential informant and/or cooperating witness' identity is kept confidential. Not only is this done to protect the integrity of an investigation and further its cause, but also to protect the cooperating witness from risk of harm. Con Edison put Jack Palazzo in harms way by needlessly revealing his cooperation status with the government. This was gratuitously malicious on Con Edison's part, particularly when one considers that Jack Palazzo's cooperation has led to the investigation which has brought forth over $2,000,000.00 in restitution to Mr. Palazzo's former employer.

5. <u>The Timeliness of the Defendant's Assistance</u>

Jack Palazzo provided assistance to the government on the very day of his arrest on March 15, 2007. Rather than "lawyer up" Jack Palazzo submitted to an extensive six hour interview by law enforcement agents and provided them with a full and complete statement concerning his complicity in both the Judlau money laundering scheme and the Felix bribery scheme. He agreed to cooperate with the government immediately and he did cooperate with the government immediately. Mr. Palazzo did not seek the assistance of counsel until after he had worn a wire on several occasions for the government.

Mr. Palazzo provided the assistance while the Judlau money laundering scheme and the Felix bribery schemes were still afoot, at a time when he could and did provide the government with evidence to successfully prosecute all the defendants who appear before the court in these related matters.

### 6. Other Factors

In addition to the five criteria set forth under USSG Section 5K 1.1, the court can consider additional grounds for downward departure. One such consideration is a defendant's "extraordinary level of cooperation." See United States v. DeMonte, 25 F3d 343 (6th Cir. 1994). It is respectfully submitted that Mr. Palazzo's cooperation was extraordinary. He provided evidence and information concerning crimes not under investigation at the time of his initial arrest. He provided complete cooperation by both wearing recording devises to obtain evidence and by testifying for the government. A second issue that the court could consider is a doctrine of fundamental fairness. See United States v. Montez-Gaviria, 163 F3d 697 (2nd Cir. 1998). In this case, Consolidated Edison is requesting restitution from Mr. Palazzo based upon crimes he admitted by cooperating with the government in addition to the crime for which he was convicted. If the court believes that the position of Con Edison is correct on the issue of restitution, fundamental fairness should reduce any sentence of incarceration that Mr. Palazzo might otherwise receive.

### CONCLUSION

Jack Palazzo is eligible for probation, by Statute 18 USC Section 3561(a). The authorized term of probation is not less than one nor more than five years, 18 USC Section 3561(c)(1). The pre-sentence investigation report states at page 41 that "the defendant is ineligible for probation, per guidelines 5B 1.1(a)." Most respectfully, the defendant does not agree with the pre-sentence investigation report. The government has made a 5K 1.1 motion by

their letter dated April 8, 2011. The court has the absolute authority to sentence Mr. Palazzo to probation.

It is Mr. Palazzo's application to the court that he be sentenced to a term of probation with such conditions that the court deems appropriate under all the circumstances of this case, including, but not limited to Jack Palazzo's personal background, his lack of any prior criminal record and his extraordinary cooperation with the United States government.

Dated: Katonah, NY
       September 8, 2011

                                      Respectfully submitted,

                                      Deren, Genett & Macreery, P.C.

                                      By: _____
                                           John Brian Macreery (8745)
                                      Office and Post Office Address:
                                      28 Edgemont Road
                                      Katonah, New York 10536
                                      (914) 232-8174

To:   Daniel D. Brownell, AUSA
      United States Attorney
      Eastern District of New York
      271 Cadman Plaza East, 7th Floor
      Brooklyn, NY 11201

      United States Probation Department
      Eastern District of New York
      147 Pierrepont Street
      Brooklyn, NY 11201